# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTHONY CORBIN )  CIVIL ACTION
 )
       v. )  CASE NO. 2:16-CV-04527-PBT
 )
ROBERT TICE, et. al. )
 )
 )

Dated: February 11, 2019

Filed on behalf of:
ANTHONY CORBIN

Filed by:
**R. EMMETT MADDEN, ESQUIRE**
THE PHILLY LAWYERS
Attorney I.D. No. 86894
711 West Avenue
Jenkintown, PA  19046
Tele:  215-884-9300
Fax:  215-701-4214
*Email: emadden@thephillylawyers.com*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY CORBIN | ) | CIVIL ACTION |
| | ) | |
| | ) | NO. 16-4527 |
| v. | ) | |
| | ) | |
| ROBERT TICE, et. al. | ) | |
| | ) | |

## Petitioner's Objections to Magistrate Judge Rueter's Supplemental Report and Recommendation

Anthony Corbin filed a <u>pro se</u> petition for a writ of habeas corpus on August 14, 2016 ("Pet."; Doc. 1). A counseled amended petition for habeas relief was filed on August 30, 2017 ("Amended Pet."; Doc. 21). After counsel filed the amended petition for habeas relief the state of law and the Commonwealth's position on the constitutionality of the jury instruction in question changed.

## Background

On June 6, 2018 United States Magistrate Judge Thomas J. Rueter issued a Report and Recommendation (R&R) addressing the claims raised in Petitioner's counseled petition. Magistrate Judge Rueter recommended that all of Petitioner's claims be denied, but that a certificate of appealability be issued regarding trial counsel's failure to object to the reasonable doubt instruction.

One of Petitioner's main allegations is that trial counsel rendered

ineffective assistance by failing to object to the trial court's impermissible instruction on reasonable doubt. That improper instruction allowed the jury to convict Petitioner without requiring the Commonwealth to meet its burden of proof beyond a reasonable doubt. The instruction on reasonable doubt, discussed in the R&R, the counseled petition, and below, uses a medical analogy to explain the concept of reasonable doubt and equate convicting with allowing a loved one to undergo an experimental but life-saving procedure.

There is a split among the district courts about this instruction, and the Commonwealth's position has changed since counsel filed the amended petition. Petitioner's objections in this matter must be viewed in light of the Commonwealth's new position and the procedural posture of cases raising an identical issue.

On February 27, 2017, Magistrate Judge Richard A. Lloret issued a Report and Recommendation in <u>Gant v. Giroux</u> examining an almost identical instruction and finding that the state court did not unreasonably apply Supreme Court precedent. <u>Gant v. Giroux</u>, 2017 U.S. Dist. LEXIS 100176. On June 27, 2017 District Judge Timothy J. Savage approved and adopted Magistrate Judge Lloret's Report and Recommendation.

On June 1, 2018, the Third Circuit Court of Appeals granted a certificate of appealability in <u>Gant</u> to examine the almost identical analogy to the one in

question here. <u>Gant vs. Superintendent Albion SCI, et al.</u> C.A., No. 17-2559, E.D. P.a. Civ. No. 2-15-CV-04468. The specific issue on appeal is "whether the trial court's reasonable-doubt instruction violated due process."

On August 11, 2017, Judge Gerald A. McHugh ruled that the same jury instruction on reasonable doubt was unconstitutional, found trial counsel to have performed deficiently in failing to object, held that prejudice was presumed from this structural error, applied AEDPA's deferential standards and nonetheless concluded that the state court decision approving the instruction was contrary to clearly established Supreme Court law, and granted habeas relief. <u>Brooks v. Gilmore,</u> 2017 WL 3475475 (E.D. Pa., Aug. 11, 2017). The Commonwealth timely appealed but, on February 28, 2018, asked the Court of Appeals for the Third Circuit to permit it to withdraw its appeal, that request was granted the same day. <u>Brooks v. Gilmore</u>, 2018 WL 1304895 (3d Cir., Feb. 28, 2018).

In <u>Baxter v. Superintendent, SCI Coal Township, et al.</u> (E.D.Pa. No. 18-0046), the petitioner raised this same claim in his habeas petition. Immediately after the Commonwealth withdrew its appeal in <u>Brooks,</u> Magistrate Judge Timothy R. Rice scheduled oral argument in *Baxter* to hear from the Commonwealth on why its decision to withdraw its appeal in *Brooks* should not result in relief for Mr. Baxter. At that oral argument the Commonwealth

conceded that the jury instruction was unconstitutional and feared that an adverse ruling by the Court of Appeals would serve as unfavorable binding precedent in all the other cases raising this same claim. *See Baxter,* N.T. 5/3/18 at 3 ("there were concerns about the instruction"), 4 ("there was concern about creating adverse precedent") and 19 ("McHugh's opinion is a recipe for relief in every one of these cases"). Indeed, the Commonwealth represented that it would no longer defend the instruction's constitutionality in any court in any case. *Id.* at 3 ("there were concerns about the instruction"); 13-14 ("there's certainly concern about the instruction"); 16 (<u>Magistrate Judge Rice</u>: "so even though your office is not going to defend the instruction, you're going to say [trial counsel] was okay not objecting to an instruction that you guys don't think was constitutional?" <u>Supervisor of District Attorney's Federal Litigation Unit</u>: "Right"); 16-17 (<u>Magistrate Judge Rice</u>: "Your position is under a *de novo* review, even though the instruction is improper, [trial counsel] wasn't ineffective?" <u>Supervisor of District Attorney's Federal Litigation Unit</u>: "That's right, your Honor."); 18 ("we don't want to encourage the instruction going forward"); 20 ("we don't contest that [the instruction] is problematic"); 32 (<u>Magistrate Judge Rice</u>: "Your office is now conceding that the instruction is improper?" <u>Supervisor of District Attorney's Federal Litigation Unit</u>: "That's our view."); 36-38 (repeated concessions that the instruction is unconstitutional).

Magistrate Judge Rice granted an evidentiary hearing but before that took place the Commonwealth agreed to explore settlement negotiations with Mr. Baxter and the hearing was continued. As of the date of this filing, those settlement discussions are on-going.

Given its concession in <u>Brooks</u>, the Commonwealth amended its position in <u>Gant</u>. On August 24, 2018 the Commonwealth did not object to Mr. Gant's request to the Third Circuit to remand the matter back to the district court. The Third Circuit granted Mr. Gant's Motion for Summary Remand on August 28, 2018 and remanded the case to the district court "to conduct further proceedings in light of the Commonwealth's concession."

On October 4, 2018 the Commonwealth submitted a letter to Magistrate Judge Richard A. Lloret, the Magistrate Judge for District Judge Timothy Savage, in which it concedes that habeas relief should be granted in the matter of <u>Kalif Gant v. Superintendent Nancy Giroux, et. al.</u>, Civil Action No. 15-04468. The Commonwealth admitted that it "will not be arguing in any of [the cases involving this jury instruction] that the instruction is constitutionally proper…." Exhibit A, p. 2. In its letter the Commonwealth reserves its right to argue that a petition could still be denied for failing to establish prejudice under <u>Strickland</u>.

In addition, in the three habeas cases in which it has filed a pleading since it settled on its new position that the instruction is unconstitutional, the

Commonwealth did not attempt to defend the constitutionality of the instruction.  See Jackson v. Capozza, (E.D.Pa. No. 17-5126), Commonwealth Response to Petition for Writ of Habeas Corpus (doc. 11), filed June 4, 2018; Baxter v. Superintendent, SCI-Coal Township, supra, Commonwealth Response to Petition for Writ of Habeas Corpus (doc. 23), filed July 16, 2018; Brown v. Superintendent, SCI Huntingdon (E.D.Pa. No. 17-2236) Commonwealth Response to Petitioner's Supplemental Memorandum of Law (doc. 34), filed Aug. 20, 2018.  Instead, in opposing relief the Commonwealth is relying on defenses such as failure to exhaust, lack of prejudice and its most novel one – that trial counsel had some strategic reason not to object to an instruction that the Commonwealth concedes was unconstitutional.

On December 3, 2018 Petitioner filed Objections to Magistrate Judge Reuter's Report and Recommendation. On January 11, 2019 The Honorable Judge Petrese B. Tucker then remanded the case back to Magistrate Judge Reuter to re-examine the constitutionality of the deficient reasonable doubt instruction from the trial court.

After Magistrate Judge Reuter filed a Supplemental Report and Recommendation on January 15, 2019, Magistrate Judge Carol Sandra Moore Wells issued a Report and Recommendation on January 23, 2019 in McDowell v. Delbalso, No. 18-1466, 2019 U.S. Dist. LEXIS 11542 (E.D. Pa. Jan. 23, 2019). In

McDowell the Magistrate Judge, echoing the decisions of Brooks and the other cases addressing this issue, ruled that habeas relief should be granted. This is despite the fact that Mr. McDowell, unlike Petitioner, failed to even preserve the claim at the state court level.

Thus, the Supplemental Report and Recommendation sits almost completely by itself in its conclusion that the instruction in question is proper. Two federal district judges, another Magistrate Judge, and the Philadelphia District Attorney's Office have all concluded that the instruction is unconstitutional. Petitioner files these objections to the Supplemental Report and Recommendation and urges this Court to grant habeas corpus relief.

## STANDARD OF REVIEW

The district judge reviews a magistrate judge's report and recommendation de novo. Fed. R. Civ. P. 72(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the Magistrate Judge with instructions." *Id.*

## OBJECTIONS

Petitioner objects to the Supplemental Report and Recommendation on the same grounds as the initial Report: The Court wrongly concluded that Judge Hughes' reasonable doubt instruction was Constitutional and incorrectly

concluded that a writ of habeas corpus should not be granted for trial counsel's failure to object to this instruction. Petitioner incorporates his original objections herein as Exhibit A and will not reiterate the points made there.

Petitioner also renews his original objection concerning Judge Hughes' improper instruction on identification, but will not readdress it here given the limited scope of the Supplemental Report and Recommendation and the incorporation of the original objections.

# I. Judge Hughes' Reasonable Doubt Instruction was Constitutionally Deficient

The Commonwealth, recognizing the deficiency in Judge Hughes' instruction, conceded that the instruction was unconstitutional in <u>Gant v. Giroux</u>, <u>supra</u>. *See* Letter from Assistant District Attorney Catherine Kiefer, Esq. to The Honorable Richard A. Lloret (October 4, 2018) (attached as Exhibit B). In <u>Gant</u> Judge Hughes gave a nearly identical instruction about reasonable doubt as the instruction at issue here.

In the Supplemental Report, Magistrate Judge Reuter points out that the District Attorney's Office, in its concession letter in <u>Gant</u>, stated that the initial concession "should not be construed as a concession *to relief* in any other case." (Exhibit "A" to Objections, at 2 (emphasis added)). Of course, the Commonwealth may argue in other cases that a defendant is not entitled to

relief for some other reason, such as a failure to meet the prejudice prong, but the District Attorney has conceded the issue of whether the instruction itself was constitutionally proper.  Magistrate Judge Reuter also notes that the court is not bound by the Commonwealth's concession, which is accurate. If this Court were to accept that recommendation, it would be the only District Court opinion which did not accept the Commonwealth's concession that the instruction was unconstitutional.

Regardless of the Commonwealth's position, the underlying claim, that the instruction violated due process, stands on its own. "Being almost identical in relevant part to the instruction given in Brooks, it is clear that a due process challenge to the reasonable doubt instruction provided at Petitioner's trial has merit." McDowell, supra (quoting Brooks, 2017 U.S. Dist. LEXIS 127703, *4).

The instruction from the trial court poisoned the definition of "reasonable doubt" against Petitioner. Once the trial court incorporated the medical hypothetical into the definition of reasonable doubt, the court stripped Petitioner of any chance of a fair deliberation and verdict.

Specifically, the instruction violated due process in two ways. First, the court used a situation - a life-threatening illness of a child or other loved one for which only one treatment existed - where any reasonable person would authorize moving forward and accept the risk. If "the best and only protocol"

was the surgery, who among us would not proceed and take that last chance to save our child? The court posed the choice between (1) on the one hand saving your child's life by moving forward and resolving the doubts and (2) watching your child die. The court's example equated the decision to move forward and authorize the surgical treatment with resolving doubts about Petitioner's guilt and moving forward to convict.

This made it simple for a juror to resolve or simply ignore altogether whatever reasonable hesitations she harbored about Petitioner's guilt: "I, the juror, am doing the right thing by moving forward, overcoming my doubts and convicting, just like I would do if my child were dying". It made conviction a foregone conclusion.

There can be no doubt in this case: the instruction is erroneous. Yet the Report and Recommendation concludes that because "Judge Hughes stated no fewer than sixteen times that it was the Commonwealth's burden to prove guilt beyond a reasonable doubt" there was not an error when the entire charge is taken as a whole. Supplemental Report and Recommendation, January 15, 2019, p. 11.

Taken in its entirety, the instruction was still erroneous because the very definition of reasonable doubt was tainted. Judge Hughes started by giving the standard instruction. But after the standard instruction the trial court

incorporated the medical hypothetical into the definition of reasonable doubt. The court told the jury that it is "helpful to think about reasonable doubt" through the lens of the medical hypothetical. Once a judge gives a definition, the jury is presumed to follow the court's instructions. Commonwealth v. Tedford, 960 A.2d 1, 37 (Pa. 2008). Thus, even though the court continued to reiterate the Commonwealth's burden, its definition of that burden allowed jurors to convict on a lower burden of proof, and even encouraged them to "move forward" beyond their doubts to save a loved one and convict Petitioner.

The definition was wrong from the beginning. Where that definition is wrong, as it was here, the entire trial becomes fundamentally unfair to the defendant, and a new trial is warranted. "Other language in the instruction does not always serve to cure the error. This is so even when the other language correctly explains the law." Whitney v. Horn, 280 F.3d 240, 256 3d. Cir. 2002) (citing Francis v. Franklin, 471 U.S. 307 at 322 (1985).

In the Supplemental Report and Recommendation, Magistrate Judge Reuter relies heavily on Bumpus v. Gunter, 635 F.2d 907 (1st. Cir. 1980) which addressed a hypothetical and found the language "flawed" but not unconstitutional. The only similarity between Judge Hughes' instruction here and the Bumpus hypothetical is that both involve surgery. The portion of the instruction addressed by Bumpus deals with the trial court's explanation of

"moral certainty" concerning a "major affair" in a juror's life:

> Now, if affairs in your life are not major and not critical, or minor, maybe you would take action without the degree of certainty that the court asks of you to have in weighing the guilt or innocence of a defendant.

> But I am going to pose to you what I think would be a major affair of your life.

> If you were a young man with a growing family and it was determined that you had a definite deficiency in your heart valve, your surgeon might well advise you that if you had corrective surgery, the heart valve deficiency could be cured and you would live a normal and useful and healthy life.

> He might also advise you that the operation was attendant with great risk, you might not survive the operation, and he also might advise you that if you don't have the operation, you might die at any time, you may live a few years, and you may live a normal life.

> In that situation, you have to make a judgment in the interests of your own health, in the interests of your family and your responsibilities to them. I would say that was a major affair in your private lives.

> Now, none of us have a crystal ball. None of us can foresee the future and we have to take a course of action. Now, all we can do is listen to the arguments for and the arguments against by those who are best able to advance those arguments to understand the pros and cons, to weigh all the evidence on both sides and then when it has been concluded make a judgment, either to have the operation or not to have it.

> If you are satisfied to a moral certainty that having weighed and evaluated everything that can be considered on the subject, the course of action you are taking is the right course for you to take. If you have a settled conviction that you are doing the right thing, that is what the law considers to be satisfaction to a moral certainty.

> That is what the law is looking for when they ask you to be satisfied to a moral certainty in pondering and weighing this issue of reasonable doubt. It asks nothing more.
>
> This is a major affair in the lives of all of us, this trial, so look for the same degree of satisfaction, of proof of the essential elements of these crimes that you would look for in major affairs of your own lives before you took action."

Bumpus, 635 F.2d at 912-13. The Bumpus hypothetical does not put the juror in a position to either "go forward" and save their loved one and convict, or let their loved one die and acquit. Instead, it explains that having or not having the procedure could both result in a poor outcome, and not having the procedure could have significant or no impact on the person's life. This stands in stark contrast to Judge Hughes' instruction which directly equates having the procedure to save a loved one's life with "moving forward" beyond a reasonable doubt and convicting.

The Supplemental Report and Recommendation, in an effort to justify the instruction, relies on several other cases. And the court correctly concludes that in many instances where there is an erroneous portion of the charge, it can be remedied by the rest of the jury instructions being appropriate. That is not the case here.

Here, the court gave the proper legal definition of reasonable doubt, which can be difficult for jurors to understand. Then, she gave an emotionally

charged hypothetical which would be incredibly easy for jurors to grasp. It allowed the jury to boil the matter down to a simple question: is this enough evidence for me to authorize a potentially life-saving procedure for a loved one, or is the evidence so lacking that I would allow my loved one to die? It is reasonably likely that this framing is how the jury grasped the concept of reasonable doubt, and thus the definition poisoned the entire instruction. Put another way, "it is likely that the jurors might have given undue weight to such a graphic example, which because of its length and nonlegal character might have been more easily comprehended and remembered than the standard instruction, resonating in the jury room as a standard of their function and responsibility." Brooks v. Gilmore, No. 15-5659, 2017 U.S. Dist. LEXIS 127703, at *14 (E.D. Pa. Aug. 11, 2017) (quoting United States v. Pinkney, 551 F.2d 1241, 1244 (D.C. Cir. 1976).

## II. Trial Counsel Rendered Ineffective Assistance by Failing to Object to the Improper Instruction

There can be no reasonable basis for trial counsel's failure to object to this erroneous instruction. As laid out more fully in Petitioner's original objections, trial counsel could have no strategic basis for failing to object to a clearly erroneous instruction. This instruction is so obviously defective that the Commonwealth has conceded its unconstitutionality and has charted an office

policy not to defend it in any court. It has decided not to even put up a brave face and muster an argument here or there to save this instruction. If the Commonwealth – Corbin's adversary -- today can recognize just how problematic this instruction is, then trial counsel -- Corbin's own advocate -- should have as well.

In <u>Brooks</u> the court reasoned that counsel's performance was deficient under the same circumstances found here:

> Because reasonable doubt is such a fundamental principle, particularly where the defendant does not testify, and the nature of the court's hypothetical was so instinctively problematic, it is difficult to fathom how any criminal defense lawyer could fail to object. The objection required was not exotic but straightforward: all counsel had to convey was that the court's hypothetical did not accurately communicate the standard for reasonable doubt, and would elevate the degree of doubt necessary for acquittal. Here, counsel's decision cannot accurately be described as the result of any strategy, let alone a reasonable one.

<u>Brooks</u> at 12.

Trial counsel's failure to object at such a critical juncture about such an important aspect of the jury instructions cannot withstand scrutiny and is clear evidence of ineffectiveness.

## III.    The Improper Instruction Created a Structural Error in Petitioner's Trial

Where, as here, an error causes fundamental unfairness, the error is

structural and requires reversal without evaluating the <u>Strickland</u> prejudice prong. <u>See</u> <u>Weaver v. Massachusetts,</u> __U.S.__, 137 S.Ct. 1911-12 (2017). The Supreme Court has long held that the absence of a proper instruction on reasonable doubt is a structural error which so undermines the fairness of the proceeding that reversal is required. <u>Sullivan v. Louisiana</u>, 508 U.S. 275 (1993).

In <u>Sullivan</u> the trial court gave an instruction on reasonable doubt that required a conviction unless the jurors harbored serous doubts. The issue in <u>Sullivan</u> was whether such an error can ever be considered harmless. Writing for a unanimous court, Justice Scalia held that a constitutionally deficient instruction on reasonable doubt can never be harmless error and explained that the instruction on reasonable doubt stands apart from an instruction on an element of a crime:

> But the essential connection to a "beyond a reasonable doubt" factual finding cannot be made where the instructional error consists of a misdescription of the burden of proof, which vitiates *all* the jury's findings. A reviewing court can only engage in pure speculation—its view of what a reasonable jury would have done. And when it does that, "the wrong entity judge[s] the defendant guilty."

<u>Sullivan</u>, 508 U.S. at 281 (internal quotation omitted).

The erroneous reasonable doubt instruction here, like the instruction in <u>Sullivan</u> and its progeny, "vitiates *all* the jury's findings." This Court simply cannot determine what may have happened with an appropriate instruction

without straying from the Supreme Court's warning about the wrong entity judging a defendant.

Because the error is structural, Petitioner need not prove prejudice. However, even if Petitioner needed to make a showing of prejudice, he has met that burden. The Commonwealth's evidence here was both weak and from credibly-suspect sources. As discussed in the amended petition, there was no physical evidence connecting Petitioner to the crime; the two identifying witnesses were at best, equivocal in their identifications made years after the incident; and the witnesses who testified that Petitioner made inculpatory statements had significant credibility issues. There is a reasonable probability that if the trial court properly instructed the jury, at least one juror would have harbored a reasonable doubt sufficient to acquit Petitioner.

## IV.    The State Court Ruling is Contrary to and Involved an Unreasonable Application of Federal Law

The state court's opinion conflicts with settled federal law by endorsing an instruction on reasonable doubt that allowed the jury to convict on proof below the reasonable doubt standard and finding that counsel was reasonable in failing to object to such an instruction. See Cage v. Louisiana, 498 U.S. 39, 41 (1991). Moreover, the state court failed to recognize the principles established

by <u>Cage</u> and <u>Sullivan</u>.

In ruling on this case, the Superior Court of Pennsylvania merely adopted the PCRA court's reasoning in this case, offering no independent appellate review. It gave short shrift to this issue, dismissing it with only a paragraph.

Without an independent appellate analysis, this court must examine the PCRA court's opinion. That opinion applied the wrong standard, holding that "there is no evidence suggesting [the instruction] caused the jury to...'up the ante to require a grave or serious doubt'." <u>Commonwealth v. Corbin</u>, No. CP-51-CR-0012372-2007, 2015 Phila. Ct. Com. Pl. LEXIS 524, at *22 (C.P. Philadelphia July 9, 2015). The question is not whether the jury actually applied the improper definition from the medical hypothetical or whether Petitioner had evidence of same. Rather, the question is whether "[a] reasonable juror *could have* interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause." <u>Cage v. Louisiana</u>, 498 U.S. 39, 40 (1991) (emphasis added).

The PCRA court gave no further analysis to justify dismissing this meritorious claim. It completely ignored the settled federal law in <u>Cage</u> and <u>Sullivan</u> and merely explained that "trial judges are granted a certain degree of latitude in their jury instructions." <u>Corbin</u>, PCRA Opinion, <u>supra</u>, at *19.

Even giving the state courts the required AEDPA deference, the state

courts rendered a decision which relied on an unreasonable application of clearly established Supreme Court law, and must be corrected by this Court.

## V. CONCLUSION

For the reasons stated herein and in Petitioner's original objections and prior pleadings, Petitioner respectfully requests that this Court grant habeas relief in the form of a new trial for Petitioner.

Respectfully submitted by:

_____/S/_____
**R. EMMETT MADDEN, ESQUIRE**
THE PHILLY LAWYERS
Attorney I.D. No. 86894
711 West Avenue
Jenkintown, PA  19046
Tele:  215-884-9300
Fax:   215-701-4214
*Email:*
*emadden@thephillylawyers.com*
Attorney for Petitioner,
Anthony Corbin

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTHONY CORBIN                    :

V.                                :        CASE NO. 2:16-CV-04527-PBT

ROBERT TICE                       :

### CERTIFICATE OF SERVICE

I, R. Emmett Madden, Esquire, hereby certify, that on this date, I served the within Petitioner Anthony Corbin's Objections to Magistrate Judge Rueter's Supplemental Report and Recommendation, on the party below in the manner indicated below.

The Attorney General of The State of Pennsylvania
The District Attorney of the County of Philadelphia
Jennifer O. Andress, Esquire
Three South Penn Square
Philadelphia, PA  19107
*Via Email*

Respectfully submitted by,

_____/S/_____
**R. EMMETT MADDEN, ESQUIRE**
THE PHILLY LAWYERS
Attorney I.D. No. 86894
711 West Avenue
Jenkintown, PA  19046
Tele:  215-884-9300
Fax:  215-701-4214
*Email:* *emadden@thephillylawyers.com*

Dated: February 11, 2019