IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY CORBIN, : | |
| : | |
| Petitioner, : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 16-4527 |
| ROBERT TICE, et al., : | |
| : | |
| Respondents. : | |

MEMORANDUM

TUCKER, J.  June 22, 2021

      Before the Court is Magistrate Judge Thomas J. Rueter's Supplemental Report and Recommendation (ECF 42) as to Petitioner Anthony Corbin's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254. Corbin is currently incarcerated at the State Correctional Institution in Huntingdon, Pennsylvania. For the reasons stated below, the Court will grant the petition and reject the Supplemental Report and Recommendation.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

      Petitioner Anthony Corbin was convicted of first-degree murder, robbery, conspiracy, and possession of an instrument of crime on January 26, 2009 by a jury in the Court of Common Pleas of Philadelphia County. *See Commonwealth v. Corbin*, No. CP-51-CR-12372-2007 (C.P. Phila.). He was subsequently sentenced to life imprisonment without the possibility for parole on the first-degree murder charge, along with consecutive terms of seven to fourteen years on the robbery and conspiracy charges, and one to two years on possession of an instrument of crime. Further factual background on the circumstances of Corbin's conviction and earlier appeals can be found in the original Report & Recommendation in this case. *See Corbin v. Tice*, No. 16-4527 (ECF 32) (E.D. Pa. June 6, 2018).

On January 15, 2019, Magistrate Judge Thomas J. Rueter filed a supplemental Report and Recommendation in this state habeas corpus case. *See Corbin v. Tice*, No. 16-4527 (ECF 42) (E.D. Pa. Jan. 15, 2019). This report was filed after Petitioner objected to the original R&R on December 3, 2018 ("Objections"; ECF 39), and this Court referred the matter back to Judge Rueter for additional discussion on the constitutionality of the jury instructions.

The objections to the original R&R focused on its treatment of the jury instruction on reasonable doubt given by the Honorable Renee Cardwell Hughes, who presided over Petitioner's case in the Philadelphia Court of Common Pleas. The original R&R had determined that the jury instruction did not violate due process of law. This was contrary to the decision in *Brooks v. Gilmore*, 2017 WL 3475475 (E.D. Pa. Aug. 11, 2017), *appeal dismissed*, 2018 WL 1304895 (3d Cir. Feb. 28, 2018), one of the expanding universe of cases addressing the Judge Hughes jury instructions. The Philadelphia District Attorney ("Philly DA") had originally opposed the holding of *Brooks* and its application to other cases involving the jury instruction—such as Corbin's—but subsequently relented and conceded in litigation of *Gant v. Giroux*, No. 15-4468 (E.D. Pa.) that the instruction was "unconstitutional". *See* Ex. A Obj. R&R (ECF 39).

## II. STANDARD OF REVIEW

On habeas review, a federal court must determine whether the state court's adjudication of the claims raised was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). The standard in § 2254(d) is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015). But "even in the context of federal habeas,

deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## III. DISCUSSION

### A. The Jury Instruction Deprived Petitioner of His Due Process Rights

Petitioner contends that his counsel's failure to object to Judge Hughes' jury instruction constituted ineffective assistance of counsel. Before getting to the standard of ineffective assistance of counsel, it needs to be established that the jury instruction was defective to begin with.

In his objections to Judge Rueter's Supplemental R&R, Petitioner reiterated his argument that Judge Hughes' jury instruction was unconstitutional. The disputed portion of the jury instruction in Petitioner's case was said as follows:

> Ladies and gentlemen, I find it helpful to think about reasonable doubt in this fashion: Each one of you loves someone. Each one of you has someone in your life who is absolutely precious, a spouse, a significant other, a child, a grandchild, someone who is just precious in your life. What if you were told that your precious one had a life-threatening condition and that the best and only protocol was a surgery? Now, very likely you are going to ask for a second opinion, maybe a third opinion. You're probably going to call everybody you know in medicine and say, What do you know about this condition? What do you know about this protocol? What do you know about this doctor? Tell me how the surgery works. Who has done it, who hasn't done it, which hospital, all the research you can do, everything.
>
> But at one point, some moment in time, the question will be, Do you allow your loved one to go forward with the surgery? If you go forward, it's not because you moved beyond all doubt. There are no guarantees. If you go forward, it's because you moved beyond all reasonable doubt.
>
> Ladies and gentlemen, a reasonable doubt must be a real doubt. It may not be a doubt that is imagined or manufactured to avoid carrying out an unpleasant responsibility. You may not find Anthony Corbin guilty based upon a mere suspicion of guilt. The

> Commonwealth's burden is proving that Anthony Corbin is guilty beyond a reasonable doubt. If the Commonwealth has met that burden, then Anthony Corbin is no longer presumed to be innocent and you should find him guilty. On the other hand, if the Commonwealth has not met its burden, then you must find him not guilty.

Suppl. R&R 10 (quoting N.T. 1/22/09, at 99-104).

Corbin argues that this instruction, through its analogy to whether the juror would be willing to go through with a medical procedure for a loved one, compromised the principle that a criminal conviction be based on evidence beyond a reasonable doubt.

Jury instructions are rarely struck down for failing to properly convey the "beyond a reasonable doubt" standard. In one of the few cases where the Supreme Court did so, *Cage v. Louisiana*, the offending instruction equated reasonable doubt to "grave uncertainty" and "actual substantial doubt," about the evidence presented, both terms that jurors would interpret to imply a higher bar for "doubt" than the real standard. 498 U.S. 39, 41 (1990). Reasonable doubt instructions are preferably phrased in terms of a situation that would make a person hesitate to act, rather than the type of doubt that would make someone eager to act (such as care for a loved one). *Holland v. U.S.* 348 U.S. 121, 140 (1954).

Challenged jury instructions are considered in their totality rather than just sentences or paragraphs in isolation, but better language in one portion of the jury instructions may not be enough to cure bad language in a different portion of the instructions. *See Bey v. Superintendent Green SCI*, 856 F.3d 230, 241 n.54 (3d Cir. 2017); *United States v. Thayer* 201 F.3d 214, 221 (3d Cir. 1999). This method is important because "[a] reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict." *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 285 (3d Cir. 2018) (quoting *Francis v. Franklin*, 471 U.S. 307, 322 (1985)).

4

The Judge Hughes instructions have led to a series of habeas petitions. While there has not been a circuit ruling on their constitutionality for habeas purposes, in the course of litigating *Gant v. Giroux*, No. 15-4468 (E.D. Pa.), the Philly DA conceded to the unconstitutionality of these jury instructions for the purposes of petitioner's claim in that case and withdrew an appeal of the *Brooks* decision. Obj. R&R (ECF 39) Ex. A 2. The office also stated that the agreement "should not be construed as a concession to relief" in identical cases. *Id.* Because the Philly DA's concession is not binding on this Court, and because judges across this district have taken conflicting positions on habeas claims involving this instruction, it is important to compare Petitioner's case to the others involving this surgery analogy.

In *Brooks v. Gilmore*, a near-identical set of jury instructions from Judge Hughes were given in a trial that led to the petitioner's conviction on first-degree murder based on just two eyewitness witnesses. *Brooks v. Gilmore*, No. CV 15-5659, 2017 WL 3475475 (E.D. Pa. Aug. 11, 2017). The court agreed with the petitioner's contention that the jury instructions violated his due process rights under the Fourteenth Amendment. Even though Judge Hughes' instructions did not use identical language to the invalidated instructions in *Gage*, "the trial judge communicated the same concepts by means of a powerful and emotionally charged metaphor. Objectively speaking, any person of decency and morals would strive to put aside doubt when faced with a single life-saving option for a loved one." *Id*. at *4.

Reasonable doubt instructions should be framed in a manner that would imply a hesitation to act, and yet the analogy to a medical operation for a loved one does precisely the opposite. *Holland v. U.S.* 348 U.S. 121, 140 (1954). Even taking into account the Third Circuit's guidance to consider challenged jury instructions in their totality, the Judge Hughes instructions in Petitioner's case fare no better. The analogy to the medical operation occupies the bulk of the

5

instructions, and the following portion reverts to standard legal language. To the extent the analogy was designed to connect with jurors, the shift to the more distant legalese would not have pulled them away from the questionable framing of the burden of proof.

*Brooks* also suggests—and this Court agrees—that a consideration in weighing jury instructions in a habeas case is the strength of the underlying evidence. No. CV 15-5659, 2017 WL 3475475, at *8 (E.D. Pa. Aug. 11, 2017) ("This is not a case where there was overwhelming evidence of guilt . . . . There was no corroborating physical evidence. In simple terms, it is the type of case where reasonable doubt plays a fundamental role."). Petitioner's case has similar issues. At trial, the Commonwealth presented two witnesses, both of whom had trouble identifying Petitioner as the shooter. Corbin's Am. Pet. (ECF 21) 2. The Commonwealth also presented three other witnesses with ties to Petitioner. One claimed that he told her he shot the decedent in this case. However, she reported the alleged admission three years after the incident and while mired in a bitter child custody dispute with Petitioner. *Id.* The second witness relayed a similar admission to police years after the incident. She was also personally involved with Petitioner and was mad at him for having an affair with another witness. *Id.* The third witness was a cellmate of Petitioner's who testified that Corbin confessed to the murder and robbery. *Id.* at 3. The jury heard little of his history as a professional witness who had cooperated in several cases. *Id.* Even in recounting what it characterized as "nothing less than overwhelming" evidence, the Commonwealth relies on those dubious confessions in its count of admissions of guilt, only highlighting the lack of physical evidence relating to Corbin. Commonwealth's Resp. (ECF 30) 16. Each of these evidentiary issues would put the *Corbin* jury in the same position as the *Brooks* jury on the importance of reasonable doubt.

The challenges to the Judge Hughes jury instruction have mostly been resolved in favor of the petitioners. In *McDowell v. DelBalso*, a petitioner serving a life sentence on a first-degree murder conviction—also convicted at a trial relying heavily on questionable eyewitness testimony—successfully challenged a near-identical jury instruction as raising due process concerns. No. CV 18-1466, 2019 WL 7484699, at *4 (E.D. Pa. Jan. 23, 2019), *report and recommendation adopted,* No. 2:18-CV-01466-AB, 2020 WL 61162 (E.D. Pa. Jan. 3, 2020) ("The trial court's violation of due process is so clear that the Commonwealth has declined to defend it.").

In *Edmunds v. Tice*, another petitioner serving a life sentence on murder and attempted murder charges was found to have grounds for habeas. This was based on an ineffective assistance of counsel claim stemming from a failure to object to identical jury instructions. *Edmunds v. Tice*, No. CV 19-1656, 2020 WL 6810409, at *9 (E.D. Pa. Aug. 31, 2020), *report and recommendation adopted,* No. CV 19-1656, 2020 WL 6799259 (E.D. Pa. Nov. 19, 2020) ("The instruction Judge Hughes gave . . . . did not consider the fact that hesitation by itself is sufficient for reasonable doubt. The instruction described reasonable doubt as an obstacle to overcome to save the life of a loved one, rather than facts that would cause a juror to hesitate to seriously consider before acting.") Additionally, in *Edmunds*, the evidence as to the contested issue at trial (whether petitioner fired his gun in self-defense) was again heavily based on eyewitness testimony, this time, of a single prosecution eyewitness who was uncooperative with authorities until he received immunity from prosecution. *Id*. at *10.

In the recently decided *Lewis v. Sorber*,[1] another judge in this district found the reasonable doubt instruction to fail constitutional muster, noting that even when looked at in a holistic fashion, there was not a complementary part of the jury instructions that eased the harm from the emotionally charged surgery hypothetical. No. 18-1576 (E.D. Pa. Feb. 1, 2021) at *27, *report and recommendation pending before Schmehl, J.* ("Although the court correctly defined reasonable doubt . . . that definition was almost immediately followed by the lengthy and very emotional example that distorted the level of doubt necessary for acquittal.") Furthermore, despite a finding that the evidence against the petitioner was not a "close call", the flawed instruction was structural error constituting prejudice for purposes of the *Strickland* standard. *Id.* at 38 and 47. ("Applying that analysis to Petitioner's case does not reveal any similar saving mechanisms. . . . there is no other phase of the trial or characteristic of the instruction to rely on to insulate the trial from the flaw in the reasonable doubt instruction . . . . [meaning] the trial was fundamentally unfair and requires reversal.")

In one of the very few cases where this jury instruction was upheld, *Gant v. Giroux*, the court characterized the challenge to the surgery analogy as making "an isolated examination" of the instructions. No. CV 15-4468, 2017 WL 2825927, at *14 (E.D. Pa. Feb. 27, 2017), *report and recommendation adopted,* No. CV 15-4468, 2017 WL 2797911 (E.D. Pa. June 28, 2017). However, as discussed above, the instructions in question are flawed even in their totality; the medical analogy is central to their impact on jurors—the very point of the digression is that it translates the distant legal language of "reasonable doubt" into something legible for the lay juror. Furthermore, the underlying evidence against the petitioner in *Gant* was substantially

---

[1] Due to the naming conventions dictated by Rule 2(a) of the Rules Governing Section 2254 Cases, the case name was changed due to the petitioner being moved to a different correctional facility. It is listed in Pacer as the older name *Lewis v. Link* 18-1576. It is available at ECF 66-1 of this docket.

stronger than in any of the other cases, including the present case. The petitioner had admitted to participating in a conspiracy to rob the decedent in a drug deal. Several weapons, along with three face masks and gloves consistent with the Commonwealth's theory had been recovered at the scene. *See Com. v. Gant*, No. 1303 EDA 2014, 2015 WL 7454133, at *11 (Pa. Super. Ct. Mar. 16, 2015) (Describing physical evidence against the petitioner Gant). This level of physical evidence was lacking in both *Brooks* and here for Petitioner Corbin's case.

Because Judge Hughes' instruction impermissibly raised the standard of proof needed for conviction, it violated Petitioner's due process rights.

### B. Petitioner Has Made a Showing of Ineffective Assistance of Counsel

As the posture of Petitioner's habeas claim is that his attorney's failure to object to the jury instruction on reasonable doubt was an example of ineffective assistance of counsel, we must now move to that analysis. Such claims are assessed under the two-part test from *Strickland v. Washington*: the claimant has to show that (1) counsel's assistance was deficient—falling below "an objective standard of reasonableness"—and that (2) the deficiency prejudiced the claimant. 466 U.S. 668, 687-88, (1984). Prejudice is demonstrated by showing that the errors deprived the defendant of a fair trial, and that but for the error, there's a "reasonable probability" that the outcome could have been different, such as by swaying the jury to find reasonable doubt. *Hinton v. Alabama*, 571 U.S. 263, 275-76, (2014); *Id*. Petitioner has made a showing on both prongs.

*1. Deficiency*

Failure to make a "crucial" or "critical" objection is deficient when it is not "the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. As problems with the reasonable doubt instruction implicate basic due process rights, courts have repeatedly found that the failure

to object in this stage of the trial can constitute a "crucial" or "critical" objection. *See Breakiron v. Horn*, 642 F.3d 126, 137-41 (3d Cir. 2011) (finding counsel ineffective for failing to request instruction on a lesser offense that would have allowed jurors to properly consider the defense theory); *Thomas v. Varner*, 428 F.3d 491, 501 (3d Cir. 2005) ("Courts have routinely declared assistance ineffective when the record reveals that counsel failed to make a crucial objection") (internal quotes omitted); *Carpenter v. Vaughn*, 296 F.3d 138, 158 (3d Cir. 2002) (finding that counsel's failure to object to a misstatement of Pennsylvania law "on a point that could play a critical role in the jury's decision" prejudiced the defendant).

Additionally, no strategic purpose is apparent for the failure to object to the jury instruction. Reasonable doubt is the bedrock of any criminal defense strategy, and the emotional nature of the jury instruction was strong enough to have raised alarms for a competent attorney. Indeed, "[t]he objection required was not exotic but straightforward . . . that the court's hypothetical did not accurately communicate the standard for reasonable doubt, and would elevate the degree of doubt necessary for acquittal." *Brooks*, 2017 WL 3475475, at *6. And yet, counsel did not object.

As a result of the relatively simple nature of the objection, combined with the critical importance of jury instructions to a defendant's due process rights, the failure of Petitioner's counsel to object to the surgery analogy instruction does constitute deficient performance calling into question the quality of "the trial [as] a reliable adversarial testing process" under *Strickland*. 466 U.S. at 688.

2. *Prejudice—Structural Error*

Given the demonstration of deficient performance, Petitioner now needs to demonstrate that he was prejudiced by this deficiency. A failure in a jury instruction defining the reasonable

doubt standard is, as a unanimous Supreme Court has held, "unquestionably . . . [a] structural error." *Sullivan v. Louisiana*, 508 U.S. 275, 282 (1993) (internal quote marks omitted).

Even if the standard prejudice analysis was applied, the same result would be reached.[2] When engaging in postconviction review, the question is whether there is "[a] reasonable probability that at least one juror would have struck a different balance." *Wiggins v. Smith*, 539 U.S. 510, 537 (2003). Or, as the Supreme Court more recently put it, whether "at least one juror would have harbored a reasonable doubt" absent the challenged aspect of trial. *Buck v. Davis*, 137 S. Ct. 759, 776, (2017). Here, the holes in the prosecution's case, including the lack of physical evidence and witnesses with substantial axes to grind against Petitioner, make it likely that reasonable doubt would have played a key role in juror decision-making. The improper jury instruction, and the failure to object to it, meet the *Strickland* standard for ineffective assistance of counsel. With that, we move to the deference state court determinations are due under the Antiterrorism and Effective Death Penalty Act (AEDPA).

### C. The State Court Determination, Even With AEDPA Deference, is Deficient

The Pennsylvania Superior Court made a determination on Petitioner's claim when he filed for post-conviction relief under the state-level PCRA provision. The state court found trial counsel to have not been ineffective, relying on a judgment that the jury instructions were acceptable. *Com. v. Corbin*, No. 537 EDA 2015, 2016 WL 1603471, at *6 (Pa. Super. Ct. Apr. 19, 2016). The court ruled the disputed instruction was proper because it was "substantially similar" to a Pennsylvania model jury instruction. *Id.* at *17.

---

[2] Recent Supreme Court precedent raises the question of if every type of structural error in the *Strickland* context can be presumed prejudicial. *See Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017). However, in *Weaver*, the court describes the failure to provide a proper reasonable doubt instruction as "always result[ing] in fundamental unfairness," to the degree that demonstrating that the error was harmless is "futile". *Weaver*, 137 S. Ct. at 1908. This language suggests that *Weaver* is still compatible with a finding of structural error that allows for a presumption of prejudice to Petitioner.

This determination, under AEDPA, is due deference and constitutes an adjudication on the merits despite its cursory treatment of the issue. *See Johnson v. Williams*, 568 U.S. 289, 298 (2013) (" § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits . . . . when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.") (internal quotes omitted).

This deference means that habeas can only be granted to Petitioner if the state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254. The first prong of the standard requires that "[a] state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The second "unreasonable determination" prong is met when the state court applies the appropriate rule from Supreme Court precedent, "but unreasonably applies that principle to the facts of the [petitioner's] case." *Id.* at 413. In determining whether a rule was properly applied, "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

An application for habeas can be granted—even with AEDPA deference—if the state court decision fails to meet either prong of the standard. In this case, both paths lead this Court to view the decision as not meeting the standard for leeway under the statute.

*1. "Contrary To"*

A state court's decision fails to meet the first standard when it looks at binding precedent and comes to a contrary decision. *Williams* 529 U.S. at 406. In their consideration of Petitioner's claim, the Superior Court did not reference Supreme Court precedent, and did not attempt to engage with the principles of *Cage* or *Sullivan* but rather the Pennsylvania Supreme Court's decision in *Commonwealth v. Fisher*, where the treatment of the challenged jury instruction was limited to a finding that the jury charge was reasonable when viewed "as a whole", despite the problems the instruction has even when looked at in the most holistic lens. *See* 572 Pa. 105, 121 (2002). The state-level consideration of Petitioner's case relied on the similarity between the Judge Hughes instruction and a sample Pennsylvania jury instruction, and went on to state that there was "no evidence" suggesting the medical procedure analogy caused the jury to incorrectly perceive the standard under which they were to consider the evidence—despite the fact that jury deliberations are treated as a black box except for extraordinary cases, such as evidence of racial bias. *See e.g. Pena-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017) (demonstrating such bias as one of the rare instances when jury deliberations can be re-examined). The state court dismisses consideration of the question as "pure speculation and conjecture", having no merit. *Com. v. Corbin*, No. 537 EDA 2015, 2016 WL 1603471, at *17 (Pa. Super. Ct. Apr. 19, 2016).

The principle from *Cage* is that words which present reasonable doubt as a particularly strong hesitation, like "grave uncertainty" or "actual substantial doubt" are impermissible because they suggest more hesitation than the reasonable doubt standard actually requires for acquittal. 498 U.S. at 41. This concept is ignored in the state court's consideration of Petitioner's case. The state court also ignores the principle from *Sullivan* that a flawed reasonable doubt instruction is enough to serve as a "structural error" for purposes of the *Strickland* ineffective

13

assistance of counsel standard. *Sullivan*, 508 U.S. at 281. The state court reached a different conclusion as to the merit of the instruction, but did so at a profoundly perfunctory level.

   *2. "Unreasonable Determination"*

The second standard is satisfied if the petitioner "demonstrate[s] that a reasonable fact-finder could not have reached the same conclusions given the evidence." *Miller v. Walsh*, No. CIV.A. 13-3093, 2014 WL 3530762, at *4 (E.D. Pa. July 16, 2014) (citing *Campbell v. Vaughn*, 209 F.3d 280, 290–91 (3d Cir. 2000)).

The state court's consideration of Corbin's objection to the jury instruction on reasonable doubt was, in sum, one paragraph. The state court ignored the amount of space the challenged analogy takes up in the reasonable doubt instruction, or the fact that the emotionally charged analogy is positioned towards the end of the instruction, which snap back into cold, distant, and clinical legalese. The analogy is presented "as a model for decision-making" in the jury instruction, meaning that its flaws are not tangential to the quality of the reasonable doubt instruction, but rather go to its core. *Brooks*, 2017 WL 3475475, at *9. These elements are simply ignored in the state-level adjudication, which leads this Court to the conclusion that it also constituted an "unreasonable determination of the facts" not deserving of AEDPA deference.

**IV. CONCLUSION**

Federal habeas relief is warranted if the state court's determination was based on an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts. Both are present here. The Supplemental Report & Recommendation is rejected and Petitioner's request for a writ of habeas corpus is granted on Claim 1.A of his petition. He must be re-tried within 180 days or released. An appropriate order follows.

14